UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TY ALDAY,                          )
                                   )
           Plaintiff               )
                                   )
     v.                            )    Civil Case No. 20-194 (RJL)
                                   )
OFFICE OF PERSONNEL                )
MANAGEMENT,                        )
                                   )
           Defendant.              )

**MEMORANDUM OPINION**
September 21, 2021 [Dkt. ## 9, 13]

Plaintiff, Ty Alday ("plaintiff" or "Alday"), is challenging the United States Office of Personnel Management's ("OPM") retroactive termination of his federal health benefits. Specifically, Alday contends that the agency's months-long delay in notifying him of his benefits termination violated the Administrative Procedure Act and the Fifth Amendment's guarantee of due process. Alday has moved for judgment on the pleadings, and OPM has cross-moved for summary judgment. For the following reasons, Alday's motion will be DENIED, and OPM's motion will be GRANTED.

**BACKGROUND**

**A.    Statutory and Regulatory Framework**

OPM administers the Federal Employees Retirement System ("FERS"). *See* 5 U.S.C. § 8401 *et seq.* Under FERS, employees who become disabled are "entitled to an annuity[.]" 5 U.S.C. § 8451(c). An employee is "disabled" if OPM determines he is "unable, because of disease or injury, to render useful and efficient service in the

employee's position." *Id.* § 8451(a)(1)(B). FERS disability annuitants may work in the private sector, but they lose eligibility if "in any calendar year the income of the annuitant from wages or self-employment or both equals at least 80 percent of the current rate of pay of the position occupied immediately before retirement." *Id.* § 8455(a)(2).

OPM also administers the Federal Employee Health Benefits ("FEHB") Program. *See* 5 U.S.C. § 8901 *et seq.*; 5 C.F.R. § 890.101 *et seq.* Under the FEHB Program, OPM contracts with health insurance carriers to provide comprehensive health insurance for federal civilian employees, their families, and other eligible individuals. *See* 5 U.S.C. §§ 8902–04. "Annuitants"—such as FERS disability recipients—may also be eligible for this program. *See id.* § 8905(b).

If an individual becomes ineligible for FEHB health benefits, he can convert his coverage *from* the FEHB group policy *to* an individual policy offered by participating health carriers. *See* 5 U.S.C. § 8902(g); *accord* 5 C.F.R. § 890.401(a), (c)(3); 5 C.F.R. § 890.201(a)(4) (requiring carriers to abide by conversion option). OPM may also temporarily extend the FEHB group coverage, 5 C.F.R. § 890.401(a)(1), (b), and, upon conversion, "the individual plan coverage is retroactive to the day following the day the temporary extension of group coverage ended," *id.* § 891.401(c)(4).

OPM is required to notify individuals within 60 days of when they become ineligible for FEHB benefits that (1) their coverage will be terminating, and (2) they have the right to convert their coverage. 5 C.F.R. § 890.401(c)(1). Individuals have "31 days" from "the date of the agency notice of the termination" to exercise their "right to convert." *Id.* § 890.401(c)(2). However, if "an agency fails to provide" this notice "within 60 days of the

date the enrollment terminates," the individual may still request conversion "within 6 months after the individual became eligible to convert[.]" *Id.* § 890.401(c)(3).

### B. Factual Background

Alday previously worked as a Rural Carrier with the United States Postal Service ("USPS"). Joint Appendix ("JA") [Dkt. # 19] at OPM3. He retired from that position due to a disability in 2005. *See id.* Because of his disability, Alday received FERS disability annuity payments for more than a decade. *See id.* at OPM69, 158. As a federal annuitant, Alday also received health coverage under the FEHB Program. *See id.* at OPM71.

In 2016, however, Alday became ineligible for his FERS disability annuity. As a retired USPS Rural Carrier, his eligibility for the program was conditioned on making less than 80% of the "current rate of pay" for that position in a given calendar year. 5 U.S.C. § 8455(a)(2). For 2016, that rate of pay was $52,994—80% of which was $42,395. JA at OPM3. That year, however, Alday worked as a chaplain and received wages totaling $10,411.80, a housing allowance totaling $31,600, and retirement plan contributions totaling $2,649.57—for a total income of $44,661. *Id.* at OPM3, 38. Because $44,661 exceeded the 80% limit of $42,395, Alday became ineligible "180 days after the end of the calendar year in which earning capacity [wa]s so restored." 5 U.S.C. § 8455. Because that calendar year was 2016, Alday was "not entitled to [the FERS disability] annuity after June 30, 2017." JA at OPM3.

Unfortunately, however, OPM did not discover Alday's ineligibility until months after the fact. Alday mistakenly believed that his $31,600 "housing allowance would not be counted as earned income" and thus failed to report his full income to OPM. *See id.* at

3

OPM70–71. OPM discovered the error in when it noticed a "discrepancy between what [Alday] reported to OPM as [his] earned income for calendar year[] 2016 and the amount reported to [OPM] by [the Social Security Administration]."[1] *Id.* at OPM189. OPM thus first notified Alday of his potential ineligibility on January 23, 2018. *Id.* at OPM189–90. Then, after confirming that Alday was ineligible, OPM informed him on April 27, 2018 that the agency was terminating his benefits retroactively, "effective June 30, 2017." *Id.* at OPM187.

This delayed determination caused five distinct harms to Alday. *First*, of course, Alday was no longer eligible to receive FERS disability annuity payments. *See id. Second*, because Alday had received FERS annuity payments for months after he became ineligible, the Government sought to collect $8,923.10 in overpayments it made to Alday during that time. *See id.* at OPM158–59. *Third*, because Alday's eligibility for the FEHB Program was conditioned on his status as a FERS annuitant, his group health coverage was *also* retroactively terminated, effective June 30, 2017. *See id.* at OPM 187–88. *Fourth*, the retroactive termination of his health coverage left Alday with thousands of dollars "in uncovered medical expenses" incurred before he knew his coverage was terminated. *See id.* at OPM72. *Fifth*, because OPM terminated Alday's FEHB coverage on April 27, 2018—more than six months from the date he lost his FEHB eligibility—he was precluded

---

[1] OPM verifies self-reported earnings information by matching it with data from the Social Security Administration, which in turn receives its information from the Internal Revenue Service. *See generally* Computer Matching Agreement Between the Social Security Administration and the Office of Personnel Management, https://www.ssa.gov/privacy/cma/CMA%201045.pdf.

4

from exercising his right to convert his group coverage to an individual plan. *See* 5 C.F.R. § 890.401(c)(3); *accord* JA at OPM71.

### C. Procedural History

Alday first challenged OPM's decision at the agency level. He disputed the agency's income calculation, urging OPM to reconsider its decision to terminate his FERS benefits. *See* JA at OPM68–69; 128–29. He alternatively sought a waiver of the agency's assessed overpayment under an exception to collection where "(a) the annuitant is without fault and (b) recovery would be against equity and good conscience." *See id.* at OPM69–71; *accord* 5 U.S.C. § 8470(b); 5 C.F.R. § 845.301. OPM accepted Alday's argument in part. While the agency declined to reverse its underlying eligibility decision, it "decided that collection would be against equity and good conscience" and thus granted a waiver for collecting the $8,923.10 overpayment. JA at OPM19.

Alday then sought reconsideration. *Accord* 5 C.F.R. § 890.104(c). He argued that "OPM should be equitably estopped from retroactively terminating" his FEHB medical coverage. JA at OPM11. Alleging unfairness and financial hardship, Alday asked OPM to "reinstate Mr. Alday's medical and dental coverage to the date that OPM notified Mr. Alday of the termination of coverage, April 27, 2018." *Id.* OPM disagreed. Noting that the agency "sympathize[d]" with Alday, it concluded that OPM "ha[d] no administrative discretion" to change the date on which Alday became ineligible—being bound by federal statute—and thus "affirm[ed]" its "initial decision" to retroactively terminate Alday's FERS and FEHB benefits. *Id.* at OPM5. OPM represented that this determination was its "final decision" on Alday's "health benefits entitlement" and that Alday "ha[d] the right to

5

appeal this decision to the appropriate Federal district court." *Id.* at OPM6; *accord* 5 C.F.R. § 890.104(e).

Alday got the point and filed his complaint in this Court on January 24, 2020, alleging two counts. *See* Plaintiff's Complaint for Declaratory and Injunctive Relief [Dkt. # 1]. *First*, Alday contends that OPM's delay in informing him of the termination of his FEHB benefits was arbitrary and capricious, in violation of the Administrative Procedure Act ("APA"). *Id.* ¶¶ 19–22. *Second*, Alday contends that the retroactive termination of his health benefits violated his Fifth Amendment right to procedural due process by depriving him of the right to convert his coverage to an individual plan. *Id.* at ¶¶ 23–28. Alday subsequently moved for judgment on the pleadings. *See* Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mot.") [Dkt. # 9]. OPM cross-moved for summary judgment. Defendant's Opposition to Plaintiff's Motion for Judgment on the Pleadings and Cross-Motion for Summary Judgment ("Def. Mot.") [Dkt. # 15]. Both motions are now ripe for review.

## LEGAL STANDARD

"[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). In these actions, "[t]he entire case on review is a question of law." *Id.* (citations and quotations omitted). Resolution of such cases turn "on the agency record—regardless of whether it is presented in the context of a motion for judgment on the pleadings or in a motion for summary judgment[.]" *Doe v. Rogers*, 139 F. Supp. 3d 120, 133 (D.D.C. 2015)

(Hogan, J.) (quoting *University Med. Ctr. of S. Nevada v. Shalala*, 173 F.3d 438, 441 n.3 (D.C. Cir. 1999)).

## DISCUSSION[2]

### A.    Arbitrary and Capricious Claim

Alday disclaims any challenge to OPM's "decision to terminate his FEHB medical coverage," instead challenging only the agency's *failure to notify* him of the termination within 6 months of the termination in order to allow him the opportunity to convert coverage. *See* Pl. Mot. at 11. Specifically, Alday argues that OPM's delayed notification is unlawful under 5 U.S.C. § 706(2) because it "represents a failure of the agency to act within proper authority and discretion, and represents arbitrary and irrational action by the agency[.]" *Id.* at 12.

The APA provides a "narrow standard of review" to "assess only whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment[.]"[3] *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020) (citations and quotations omitted). Under this

---

[2] This Court has jurisdiction under the Federal Employees Health Benefits Act. *See* 5 U.S.C. § 8912 ("The district courts of the United States have original jurisdiction, concurrent with the United States Court of Federal Claims, of a civil action or claim against the United States founded on this chapter.").

[3] For actions to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), the D.C. Circuit examines the six "*TRAC*" factors to determine whether delay is "unreasonable." *See Telecommunications Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984). But where—as here—the agency has already taken the challenged action, the *TRAC* factors are "not directly apposite," and such "claim[s] of unreasonable delay" are reviewed under the familiar arbitrary and capricious standard. *See Ry. Lab. Executives' Ass'n v. U.S. R.R. Ret. Bd.*, 842 F.2d 466, 475 (D.C. Cir. 1988).

standard, "[a]n agency's action must be within its lawful authority, and the process by which it reaches that result must be logical and rational." *Farrell v. Blinken*, 4 F.4th 124, 137 (D.C. Cir. 2021) (citations and quotations omitted). Where an agency "adequately explain[s] why" it took an action, the court "must uphold its decision." *Mingo Logan Coal Co. v. Env't Prot. Agency*, 829 F.3d 710, 730 (D.C. Cir. 2016).

OPM's delayed notification was not arbitrary or capricious because the agency has offered a clear and rational explanation for why its notice to Alday was delayed. Namely, OPM could not have provided notice any sooner because—as a result of Alday mistakenly misreporting his income—the agency only became aware of Alday's ineligibility in January 2018. OPM explains that it primarily relies on annuitants' self-reported income to determine FERS eligibility and verifies that self-reported information by matching it with income tax data. *See* Def. Mot. at 5–7 (citing 5 C.F.R. § 844.402(d)). It is undisputed here that Alday mistakenly underreported his income. *Id.* at 13; *accord* Plaintiff's Reply to Defendant's Opposition to Motion for Judgment on the Pleadings and Opposition to Cross-Motion for Summary Judgment ("Pl. Reply") at 5 [Dkt. # 16] ("Mr. Alday broke down his income to separately report the housing allowance" because he "mistakenly believed that Defendant . . . would not count the housing allowance as income"). Thus, OPM did not detect Alday's ineligibility until January 2018, when it verified Alday's self-reported data against his income tax data. *See* Def. Mot. at 13.

This explanation is sufficient. Because plaintiff's own misreporting caused a lag in the agency detecting Alday's ineligibility, the delay was "reasonable and reasonably explained," thereby satisfying "the APA's deferential arbitrary-and-capricious standard."

*FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1155 (2021); *accord Off. of Foreign Assets Control v. Voices in Wilderness*, 382 F. Supp. 2d 54, 61 (D.D.C. 2005) (Bates, J.) (finding that agency delay in bringing enforcement action was not arbitrary and capricious where delay was due to agency's "internal review").

Alday does not contest the substance or reasonability of OPM's explanation but makes two challenges to its legal import. *First*, he contends that OPM made no mention in the administrative record of Alday's misreporting causing the delayed notice, thereby rendering the explanation an impermissible "post hoc rationale" for the agency's decision. *See* Pl. Reply at 5–7. Not so. OPM expressly cited the fact that Alday misreported his income in its agency-level decision.[4] *See* JA at OPM4 (citing "discrepancy" between Alday's self-reported income and "amount reported to OPM by Social Security"), OPM167 ("The annuitant erroneously reported [his] earned income during the annual Disability Earnings Survey[.]").

*Second*, Alday argues that OPM's waiver of the overpayment *required* the agency to find that he was "without fault," 5 C.F.R. § 845.301, thus meaning that Alday could not have been the reason for delay. *See* Pl. Reply at 6–7. Again: not so! The agency's

---

[4] While OPM did not cite Alday's misreporting as a reason *for the delay*, Alday himself did not challenge the delay before the agency. *See* JA at OPM10–11 (objecting to retroactivity on equitable estoppel grounds), OPM38–39 (objecting to income calculation), 68–71 (objecting to income calculation; requesting waiver of overpayment based on good faith mistake, financial hardship, and fairness; challenging retroactive termination of FEHB benefits on equitable estoppel grounds), OPM128–29 (objecting to income calculation). An agency's "decision cannot be deemed arbitrary and capricious for failing to address arguments [the plaintiff] never made." *Hensley v. United States*, 292 F. Supp. 3d 399, 409 (D.D.C. 2018) (Kelly, J.).

definition of being "without fault" does not equate with being *correct*. *See* 5 C.F.R. § 845.302(a)(1) ("Pertinent considerations in finding fault are . . . Whether payment resulted from the individual's *incorrect but not necessarily fraudulent statement, which he or she should have known to be incorrect*[.]" (emphasis added)). There is thus no contradiction in OPM's conclusion that Alday "erroneously reported [his] earned income," but that the mistake did "not appear deliberate[.]" JA at OPM167 (emphasis altered). Alday's arguments thus fail to render unreasonable OPM's explanation for the delay.

**B.   Procedural Due Process**

Alday next argues that OPM violated the Fifth Amendment's guarantee of due process because (1) Alday had "a property interest in his option to timely convert FEHB medical coverage upon his termination," and (2) OPM—by giving him notice after the time for conversion had expired—deprived him of that interest without "a real option and opportunity to convert his medical coverage[.]" Pl. Mot. at 13–15. I disagree.

Procedural due process is governed by a flexible balancing of the relevant interests. "The fundamental requisite of due process of law is the opportunity to be heard at a meaningful time and in a meaningful manner." *Alaska Commc'ns Sys. Holdings, Inc. v. Nat'l Lab. Rels. Bd.*, 6 F.4th 1291, 1298 (D.C. Cir. 2021) (citations and quotations omitted). Rather than a "one-size-fits-all procedure . . . due process is flexible and calls for such procedural protections as the particular situation demands." *Statewide Bonding, Inc. v. United States Dep't of Homeland Sec.*, 980 F.3d 109, 118 (D.C. Cir. 2020) (citations and quotations omitted). Courts must consider three factors to determine the process due: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous

10

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (citations omitted).

Here, OPM accorded Alday due process.[5] It is axiomatic that where a deprivation is caused by an individual's "failure to comply with a reasonable procedural or evidentiary rule," the Government "accords due process[.]" *Thomas v. Arn*, 474 U.S. 140, 155 (1985) (citation and quotation omitted) (emphasis omitted). Alday was required to accurately report his income in order to maintain his eligibility for his FERS disability annuity and the FEHB Program. *See* 5 C.F.R. § 844.402(c)–(d). However, Alday misreported his income, and due to that error, OPM did not discover that Alday was ineligible until the six-month conversion window had closed. *See id.* at OPM167, 189. As such, it was Alday's noncompliance with a reasonable procedural rule that caused the deprivation of his right to conversion. Thus, OPM's actions were *not* contrary to the Fifth Amendment. *See Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 517 F. Supp. 2d 391, 414 (D.D.C. 2007) (Urbina, J.) (agency "rejected [plaintiff's] claims in accordance with due process" where plaintiff "did not comply with" procedural rule).[6]

---

[5] I assume arguendo that Alday had a property interest in his right to conversion. *See, e.g., Blanchett v. DeVos*, 490 F. Supp. 3d 26, 38 n.9 (D.D.C. 2020) (Contreras, J.) (assuming "cognizable property interest to which due process protections attach" for purposes of assessing whether plaintiff received process due).

[6] In addition, "a procedural due process claim requires the plaintiff to identify the process that is due." *Doe by Fein v. D.C.*, 93 F.3d 861, 870 (D.C. Cir. 1996) (per curiam). Here,

## CONCLUSION

In sum, OPM's actions were neither arbitrary and capricious, nor inconsistent with the Fifth Amendment. I would note, however, that while I am not impressed with the agency's anemic response to Alday's good-faith mistake, I am painfully aware of the limitations on a Federal Court in a situation like this. Indeed, by comparison, if OPM had "in equity and good conscience" come up with a less painful solution to Alday's predicament, who would have been able to litigate that decision any further?

For all of the foregoing reasons, Alday's Motion for Judgment on the Pleadings is **DENIED**, and OPM's Motion for Summary Judgment is **GRANTED**. A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

the agency has procedures to notify individuals when they become ineligible for the FEHB program and to provide them an opportunity to convert their coverage. *See* 5 C.F.R. § 890.401. Alday, however, does not suggest what additional process is due to beneficiaries who—like himself—accidentally misreport their income. For example, Alday faults the agency for "fail[ing] to provide Mr. Alday appropriate procedural protection" and for giving "deficient" notice, Pl. Mot. at 15, but these conclusory assertions beg the question of what procedures *would* be appropriate. Thus, Alday's "due process claim[] also fail[s] for an independent reason—[he] has not suggested what plausible alternative safeguards would be constitutionally adequate." *See Statewide Bonding*, 980 F.3d at 120 (citation omitted); *accord Morello v. D.C.*, 621 F. App'x 1, 2 (D.C. Cir. 2015).